UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| GONSALVES-PASTORE REALTY, LLC d/b/a CENTURY 21 | : : : | |
| *Plaintiff,* | : : | |
| vs. | : : | C.A. No. |
| TWIN CITY FIRE INSURANCE CO. d/b/a THE HARTFORD | : : : | |
| *Defendant.* | : | |

# COMPLAINT

Now comes Plaintiff Gonsalves-Pastore Realty, LLC, d/b/a Century 21 ("Gonsalves-Pastore"), and alleges for its Complaint against Twin City Fire Insurance Co., d/b/a The Hartford ("Twin City"), as follows:

## PARTIES

1. Gonsalves-Pastore is a real estate agency organized as a limited liability company, doing business as Century 21. Its primary place of business is 126 Broad Street, Cumberland, Rhode Island.

2. Twin City is an insurance company organized under the laws of the state of Indiana which provides, *inter alia*, real estate errors and omissions insurance policies in the State of Rhode Island, doing business as The Hartford. It is licensed by the State of Rhode Island to provide insurance products in Rhode Island. Twin City is incorporated at 150 West Market Street, Suite 800, Indianapolis, Indiana, and upon information and belief its primary place of business is at One Hartford Plaza, Hartford, Connecticut.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), as the parties are citizens of different states, and the amount in controversy is over $75,000.

4. Venue is appropriate in this Court under 28 U.S. Code § 1391(b), as a substantial part of the events and omissions giving rise to the claims brought herein occurred in this judicial district.

5. This Court has jurisdiction over Twin City as it has availed itself of the protections of the laws of the State of Rhode Island and has minimum contacts with it sufficient to satisfy due process of law.

**FACTS**

6. On December 15, 2017, Mr. Mauro Poletti ("Mr. Poletti"), upon information and belief a resident of New South Wales, Australia, filed a complaint (the "Complaint") against Gonsalves-Pastore, Ms. Linda Glynn ("Ms. Glynn"), and Sunflower Real Estate, LLC ("Sunflower") in Rhode Island Superior Court. The resulting action is captioned *Mauro Poletti v. Linda Glynn, et al.*, PC-2017-6074. A true and accurate copy of the Complaint is attached hereto as *Exhibit A*.

7. The Complaint makes numerous allegations of fraud and negligence against Ms. Flynn and Sunflower, and alleges that Gonsalves-Pastore was negligent in supervising Ms. Glynn who is a real estate agent with Gonsalves-Pastore.

8. To Gonsalves-Pastore's knowledge, she has acted as real estate agent, and received commissions, for at least five purchases and sales of property in which Sunflower was a party, each of properties in Rhode Island. Per her Independent Contractor Agreement, Ms. Glynn shared parts of those commissions with Gonsalves-Pastore.

9. Count VII of Mr. Poletti's lawsuit is the sole count against Gonsalves-Pastore. It alleges that Ms. Glynn's alleged fraud was "undertaken in furtherance of her employment or association with Gonsalves-Pastore," that "Gonsalves-Pastore owed a duty to [Mr. Poletti]" as Ms. Glynn's alleged principal, and that Gonsalves-Pastore "failed to properly oversee and supervise the acts of Glynn," causing Mr. Poletti's damages. *Exh. A* at ¶¶ 37-41.

10. In 2017, Gonsalves-Pastore purchased an errors and omissions insurance policy from Twin City, with a term beginning on October 8, 2017, and ending on October 8, 2018 and a retroactive date of August 1, 1986 (the "Policy"). A true and accurate copy of the Policy is attached hereto as *Exhibit B*. Like all previous policies between the parties, this contract was written in Rhode Island.

11. The Policy provides coverage in the following terms:

> We will pay on behalf of an **insured,** subject to the **limit of liability**, such **damages** in excess of the applicable deductible for **claims** made during the **policy period** or applicable **extended reporting period** and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or within any applicable **extended reporting period**. The **damages** must arise out of a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional real estate services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

*Exh. B* at Section I ¶ A (bold in original[1]).

12. The Policy provides for the defense of claims in the following terms:

> Subject to all terms and conditions of the policy, we shall appoint counsel of our choice to defend any suit against an **insured** seeking **damages** which are payable under the terms and conditions of this policy, even if any of the allegations of the suit are groundless, false, or fraudulent. Other than suits for **damages** as set forth above, we at our sole option shall have the right, but not the obligation, to appoint counsel to defend any suit or other proceeding.

---

[1] Unless otherwise noted, all bolded terms in quotes from Exhibits B and C, introduced *infra*, are original to the exhibit in question: both *Exhibit B* and *Exhibit C* use bold font to set off defined terms.

*Exh. B* at Section I, ¶ C(1).

13. The Policy defines "Insured" to include "[a]ny of your employees, agents, or personal assistants, including any independent contractors." *See Exh. B* at Section I ¶ B(7)(c).

14. The Policy, as amended by Endorsement 14, additionally defines "Insured" to include "[a]ny entity formed by an **insured** person, but only for **professional real estate services** performed by such **insured** person on behalf of the **named insured**." *Exh. B* at Endorsement No. 14.

15. The Policy defines "professional real estate services" as

> services performed by you or on your behalf for others as a real estate agent, real estate broker, real estate salesperson, real estate personal assistant, real estate independent contractor, real estate consultant or counselor, real estate leasing agent, real estate property manager, business broker, **short-term escrow agent** or auctioneer of real property.

*Exh. B* at Section I ¶ B(14).

16. Gonsalves-Pastore was served with the complaint filed by Mr. Poletti on December 22, 2017. Per the terms of the Policy, Gonsalves-Pastore tendered a demand for defense and indemnification in the Rhode Island Superior Court action to Twin City through its insurance agent on December 29, 2017.

17. By means of a letter dated January 11, 2018, Twin City formally denied coverage for Gonsalves-Pastore's tender (the "Denial Letter"). A true and accurate copy of the Denial Letter is attached hereto as *Exhibit C*.

18. The Denial Letter identified as Gonsalves-Pastore, Ms. Glynn, and Sunflower as insureds. *Exh. C* at p. 3. The Denial Letter also noted that "to the extent that Glynn or Sunflower LLC performed other services that were not performed on your behalf, e.g. the Complaint references payment to Glynn 'for particular administrative duties provided by her

4

regarding the various real estate projects, including bookkeeping services', Glynn and Sunflower LLC would not be **Insureds**." *Id.*

19. The Denial Letter stated two present reasons for denying Gonsalves-Pastore's claim. *Exh. C* at pp. 3-5.

20. The first stated reason is based on the following exclusion:

This insurance does not apply to **claims**:
. . .
7. Arising out of the inability or failure to pay, collect or safeguard funds held or to be held for others or any conversion, misappropriation, comingling or defalcation of funds or other property.

*Exh. C* at p. 3 (quoting *Exh. B*, Policy at Section II, ¶ 7)

21. According to the Denial Letter, "the Complaint alleges that Glynn and/or Sunflower, or both, have unlawfully misappropriated funds they held for the sole and exclusive benefit of the Plaintiff," and therefore "coverage for this matter is not available pursuant to the terms of Section II of the Policy, paragraph 7, set forth above."

22. Gonsalves-Pastore avers that this reasoning cannot be applied to Gonsalves-Pastore as an insured, as the Complaint does not allege that Ms. Glynn or Sunflower misappropriated funds handled in the context of their actions as insureds or as providing Professional Real Estate Services as defined in the Policy. To the extent Ms. Glynn and/or Sunflower may have misappropriated funds, their actions were undertaken not on Gonsalves-Pastore's behalf, and therefore by the Denial Letter's own terms, they should not have been considered insureds in determining the applicability of that exclusion. *Exh. C* at p. 3.

23. The second reason stated for a denial is based on the following exclusion:

Arising out of or based upon the rendering of **professional real estate services** for property developed, constructed, owned or to be purchased by any **insured** or by any entity in which any **insured** has a financial interest, or by any entity coming under the same financial control as an **insured**.

*Exh. C* at p. 4 (quoting *Exh. B*, Policy at Section II, ¶ 17 and Endorsement No. 6).

24. According to the Denial Letter, because the properties whose purchases and sales were allegedly the means by which Ms. Glynn and/or Sunflower defrauded Mr. Poletti were purchased and sold by Sunflower, and Sunflower was both itself insured and was owned by Ms. Glynn, herself an insured, "coverage for this matter is [] not available pursuant to the terms of Section II of the Policy, paragraph 17 as set forth above." *Exh. C* at p. 5.

25. Gonsalves-Pastore avers this reasoning cannot be applied to itself as an insured, as neither Sunflower nor Glynn was acting on behalf of Gonsalves-Pastore in their respective capacities as owner of the properties in question and sole member of the owner. Therefore, by the Denial Letter's own terms, neither should have been considered an insured for purposes of this exclusion. *Exh. C* at p. 3.

26. No other rationale given in the Denial Letter for denying defense and indemnification of the Superior Court Action applies to Gonsalves-Pastore. *Exh. C,* pp. 5-7.

27. No other exclusions in the Policy would apply to deny coverage for Gonsalves-Pastore for the Superior Court Action. *See generally Exh. B*.

28. The denial of the claim tendered by Gonsalves-Pastore is therefore a breach of the contractual terms contained in the Policy.

29. The allegations contained in the Complaint levied against Gonsalves-Pastore complain of, among other actions, negligent acts or actions on the part of the insured in performing professional real estate services. *Exh. A* at ¶¶ 36-41.

30. The Policy, by its own terms, provides coverage for claims arising from "negligent act[s], error[s], [or] omission[s] . . . in the rendering of or failure to render **professional real estate services** for others by you or on your behalf." *Exh. B* at Section I, ¶ A.

6

31. The Complaint's allegations against Gonsalves-Pastore bring the Superior Court Action within the risk coverage of the Policy.

32. Under Rhode Island law, Twin City is has an unequivocal duty to defend Gonsalves-Pastore from complaints which contain statements of facts which bring the case within or potentially within the risk coverage of the Policy.

33. Additionally, the Policy contains the following arbitration clause:

Any controversy arising out of or relating to this policy or its breach shall be settled by binding arbitration in accordance with the rules promulgated by the American Arbitration Association, except as provided herein.

The arbitration will be held in New York, New York unless the arbitrators agree that it be held elsewhere. The laws of the State of New York will govern any dispute resolved by arbitration as provided herein.

*Exh. B* at Section III, ¶ F.

34. The purpose and effect of this arbitration policy is to remove the possibility of bringing an action against Twin City in any court of competent jurisdiction in the State of Rhode Island.

35. This arbitration clause is contrary to the public interest as expressed by the Rhode Island General Assembly under R.I. Gen. Laws § 27-2-15.

36. As noted above, the parties to this case are an LLC residing entirely in the State of Rhode Island, and an Indiana corporation which, upon information and belief, is domiciled in Connecticut, and the underlying dispute involves a dispute over indemnification and defense of an action brought in Rhode Island state courts over Rhode Island state law claims, under a contract written for a real estate agency which operates exclusively in Rhode Island. The only connection of any of the parties to New York State is that Twin City has requested that claims under the Policy be addressed, if sent via physical mail, to a claims office based in New York City.

37. Therefore, the choice of law and choice of venue provisions in this arbitration clause are additionally contrary to the choice of law principles of the State of Rhode Island and 28 U.S.C. § 1391.

## COUNT I
### *Declaratory Judgment and Indemnity*

38. Gonsalves-Pastore hereby repeats and realleges Paragraphs 1 through 37 as if fully set forth herein.

39. Gonsalves-Pastore properly tendered its claim for defense and indemnification of the Superior Court Action to Twin City, through its insurance agent, on December 29, 2018.

40. Twin City formally denied Gonsalves-Pastore's request for defense and indemnification of the Superior Court Action on January 11, 2018.

41. Under the terms of the Policy as written, Twin City had no basis for its denial of Gonsalves-Pastore's claim.

42. In so denying the claim tendered by Gonsalves-Pastore, Twin City breached the terms of the Policy.

WHEREFORE, Gonsalves-Pastore respectfully prays:

a. That this Honorable Court, pursuant to R.I. Gen. Laws §9-30-1, *et seq.*, declare and adjudge the Denial Letter in error;

b. That this Honorable Court declare and adjudge that no exclusion under the Policy, including those identified by Twin City, applies to Gonsalves-Pastore;

c. That this Honorable Court declare and adjudge that the denial of the claim tendered by Gonsalves-Pastore constitutes a breach of the contract embodied by the Policy;

d. That this Honorable Court declare and adjudge that the Complaint contains a statement of facts which brings the Superior Court Action within, or in the alternative potentially within, the risk coverage of the policy;

  e. That this Honorable Court declare and adjudge that Gonsalves-Pastore is entitled to a defense in the Superior Court Action from Twin City, at Twin City's expense, from the date of the original tender, pursuant to the Policy;

  f. That this Honorable Court declare and adjudge that Gonsalves-Pastore is entitled to indemnification in the Superior Court Action pursuant to the Policy, including, but not limited to, an award of attorney's fees that Gonsalves-Pastore has been forced to incur in the defense of the underlying action as a result of Defendant's wrongful refusal to provide a defense; and

  g. That this Honorable Court grant to Gonsalves-Pastore such other and further relief as this Court deems just, necessary and proper.

## COUNT II
### *Declaratory Judgment*

43. Gonsalves-Pastore hereby repeats and realleges Paragraphs 1 through 42 as if fully set forth herein.

44. The Policy contains an arbitration clause which directs that all disputes under the Policy shall be settled by arbitration, which shall take place in New York, New York, and which shall apply the law of the State of New York.

45. Neither Twin City nor Gonsalves-Pastore has any meaningful connection to the State of New York.

46. No part of the claim tendered by Gonsalves-Pastore involves the State of New York in any way.

47. The arbitration clause contained in the Policy has the purpose and effect of preventing any action from being brought against Twin City in any court of competent jurisdiction within this state

48. The arbitration clause contained in the Policy is contrary to the public interest as expressed by the Rhode Island General Assembly, as expressed in R.I. Gen. Laws § 27-2-15.

49. The arbitration clause contained in the Policy is contrary to the choice of law principles of the State of Rhode Island.

WHEREFORE, Gonsalves-Pastore respectfully prays:

a. That this Honorable Court, pursuant to R.I. Gen. Laws §9-30-1, *et seq*., declare and adjudge the arbitration clause is contrary to public policy, and therefore unenforceable;

b. That this Honorable Court declare and adjudge the arbitration clause is contrary to the principles of choice of law and choice of venue enshrined in Rhode Island and Federal law, and is therefore unenforceable;

c. That this Honorable Court declare and adjudge that all underlying disputes regarding the Policy, including the claim tendered by Gonsalves-Pastore regarding the Superior Court Action, can be settled by means of the instant action; and

d. That this Honorable Court grant to Gonsalves-Pastore such other and further relief as this Court deems just, necessary and proper.

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY AS PROVIDED UNDER THE RHODE ISLAND UNIFORM DECLRATORY JUDGMENT ACT, R.I. GEN. LAWS §9-30-9.

Plaintiff,
Gonsalves-Pastore Realty, LLC,
d/b/a Century 21,
By its Attorneys,

 */s/ Matthew T. Oliverio*
Matthew T. Oliverio, Esquire (#3372)
Santiago H. Posas, Esquire (#9519)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com
shp@om-rilaw.com

Dated: April 11, 2018